Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning everyone. We have four appeals to hear this morning. Judge Rosenbaum and I are pleased to welcome our colleague Chief Judge Mike Moore from the Southern District of Florida to assist us with the first three of these four appeals this morning. He sat with us many times before and was with us on Wednesday and we really appreciate his assistance this morning. After we hear the first three appeals, then we'll reconstitute the court. It should not require really any interruption. Judge Luck will join us by phone before we have finished the third appeal and then we'll participate with the two of us in hearing that last appeal this morning. All the lawyers should know that we are familiar with your cases. We've read your brief. The you have limited time this morning. You should feel free to get straight to the heart of your argument and raise your most important points. Please do listen out for the courtroom deputy about when your time is about to expire. And if the deputy tells you that your time has expired but you're still answering a question from the court, you should feel free to finish your answer but do be mindful of the time limit. Our first appeal this morning is United States v. Knight. Ms. Bloom. Good morning, your honors. May it please the court. I'm Aliza Hoffman-Bloom and I represent Appellant Anthony Knight. There are two primary reasons why Mr. Knight's motion to suppress should have been granted. First, the district court erred by grounding its reasoning on the hypothetical possibility that Mr. Knight could have driven away with skilled driving or walked away. So whether a person can physically evade the police is not the test for assessing whether a police encounter is essential. The appropriate test is whether a reasonable person considering all the circumstances would feel free to leave. Well, wasn't there another individual present with Mr. Knight's, that is Mr. Keaton, who in fact walked away? Yes, critical differences between Mr. Keaton and Mr. Knight are important to explain. First of all, Mr. Keaton began walking away into the residence before Officer Seligman parked his patrol car in the manner that he did. He was closer to the residence. But the officers called out to him, did they not? Officer Samuel started to walk towards him, but he was already walking towards the house. The most important, that Mr. Knight, that Mr. Keaton was able to walk away. Mr. Knight was differently situated than Mr. Keaton in an important way. He was on the driver's side of his own car. By the time Officer Seligman parked, after having crossed the median against the flow of traffic on the wrong side of the road, he was between his own car and the park's police car. After Officer Seligman got out, Officer Samuel, having not made contact with Mr. Keaton, was returning to the passenger's side. So at that point, Mr. Knight is facing two officers, Officer Seligman approaching him from the driver's side, Officer Samuel returning from having not made contact with Mr. Keaton. This is an analysis where you look at the full picture as opposed to a hypothetical possibility. Under these circumstances, any reasonable person would not feel that they had a choice of whether or not to interact with this officer flanking him. A reasonable person would have done exactly what Mr. Knight did here, which is to succumb to the officer's show of authority and retreat into the driver's seat and close the door. Further, the government's fallback position that any seizures were supported by reasonable suspicion is simply wrong. The record is clear that Officer Seligman and Samuel need a U-turn because of some sort of hunch about a potential burglary, and every piece of information following their U-turn dispelled any such suspicion, not corroborated. By the time they returned, crossing the median, parking, as they testified, on the wrong side of the street, nearly trunk to trunk with Mr. Knight's parked car. By that time, Mr. Keaton, as you mentioned just prior, had already walked straight into the residence. This dispelled any suspicion that they were burglarizing or robbing the car. Moreover, Mr. Knight walked into the driver's seat and closed the car. Critically important as well is what they don't see. And here, what they don't see is Officer Seligman and Samuel don't see Mr. Knight or Mr. Keaton at any point trying to take property from the car, trying to pry open the lock, trying to pry open the door as the magistrate says fast, taking flight from the car. There's just nothing inherently suspicious in this case that would justify reasonable suspicion. And indeed, as Officer Seligman testified himself at the suppression hearing, by the time he approached Mr. Knight, he thought it was a consensual encounter. So certainly, there's just simply not articulate suspicion for Terry's death in this case. This is a case that requires you to look, Your Honors, at the entire picture, and that picture begins when Mr. Knight is standing outside his own parked car. He's passed once by the student patrol officers. They make a U-turn, return, cross the median, park on the wrong side of traffic, nearly trunk to trunk from Mr. Knight, parked Oldsmobile. Officer Samuel goes out to speak to his companion, fails to do so, and returns walking back towards the passenger side. Mr. Knight retreats and becomes to their of mind that's inappropriate. The frame of mind is using his physical possibility. This must have steered from the record. Using conclusions such as, yes, Mr. Knight's parked car was impeded, but, quote, with skilled driving, he could have gotten away. That's not the analysis here. Everyone agrees that Mr. Knight was impeded by the manner in which the officers parked their patrol vehicle. I have a question about that. As I understand the record, your client's car was parked in the same direction as traffic, right? That is, although off the road, if he were to return to the road with the car, he would be going, he would already be pointing in the correct direction for traffic. Isn't that right? He was on the, yes, on the private residence, but on the grass, so on the private residence park. He would be able to pull out and go towards the right track. Yeah, and so the police car is in the opposite direction. It's in the wrong direction. It's facing traffic, right? Correct. Correct. And however far apart they are, as I understand it, the two trunks of these cars are aligned, right? That's the evidence on the record. Right. So it does seem to me that that's very different from, say, Beck's case. So, Judge Pryor, I disagree. I think Beck's is a very similar situation, although, of course, every factual situation needs to be looked at in its totality and in its own circumstances. In Beck, in Beck, the former First Circuit found it very, very important that the officer's car was partially impeding or impeding the ability to drive away. That's a critical factor. No one positive, but it is a critical factor. As in Beck, here, where the officer interrupted their patrol by pulling alongside a parked car, they clearly took the sort of action contemplated by Terry. It's a different position, but it's very similarly effectively parking him in and giving the overall show of authority that the case law requires us to consider when deciding whether or not... So they didn't activate the blue lights, right? They did not. Nor did they show a gun. No one drew a gun, right? Yeah. And most, they pull out a flashlight, which is what you would do for a stranded motorist. I mean, they could have thought, having heard this car, someone try to start it and not start, and maybe someone was having car trouble. And they just approached the person. An appropriate inference may have been that they were having car trouble. Certainly. Yes, they did not use some of the other seizure factors. In this case, first of all, the case law tells us that the primary factor is the extent to which an individual's path or exit has been blocked or impeded. And in this case, you look at whether there's been show of authority. In this case, I don't believe that the officers, after having crossed the median and parked up on Mr. Knight in the manner they did at night when he's parked in a private lot... Two minutes remaining. ...needed to do anything else to end the case. Needed to do anything else. Looking at the totality of the circumstances, no reasonable person, after the officers did what they did, and certainly by the time they are both on foot, having exited their patrol car, would feel free to leave, either by foot or by car. Okay. Anyone else have any questions? I did not. I don't. I'll reserve the rest of the time for rebuttal if necessary. Okay. You've saved five minutes. Ms. Gershow? Good morning, Your Honors, and may it please the Court. Holly Gershow on behalf of the United States. This was a consensual encounter. As the District Court found, at the point at which Knight contends he was seized, none of the factors that this Court looks at to determine if an encounter is consensual pointed towards it being anything but a consensual encounter. The officers had not activated their patrol car's lights or sirens, had not displayed their weapons, had not touched Knight, had not asked for or retained his identification, and, in fact, had not spoken to Knight at all, let alone with harsh language or an authoritative tone. How much weight should we put on the fact that the location of the patrol car made it very difficult, or at least somewhat difficult, for Knight to drive away? I don't think that the record supports that supposition. The District Court's findings on page 10 through 11 of its order, the District Court made three findings with respect to Knight's ability to drive away. One, it was not established that Knight's car was parked in. Two, Knight's car would not start. That is what prevented him from driving away, not the parked police car. And three, that the seizure factors, including whether his past was blocked or impeded, were implicated only after the police had smelled marijuana and had lawfully begun their narcotics investigation. The District Court's finding that Knight could have driven away is supported by the record. Knight testified that he parked his car in that spot before and that when he normally pulled out of the spot, he would back up a little bit and then pull straight forward. He further admitted that the patrol car did not pull directly behind his car and that he could have backed up two, three feet and then pulled out of the parking spot. And the photographs of Knight's car, in which the patrol car is not visible, show that the patrol car was not directly behind Knight's car. So taking the facts in the light most favorable to the District Court's order, its findings that Knight could have driven away, assuming his car would start, is not clearly erroneous. Can I ask you a question about, let's ask you a question about Keaton and opposing counsel's discussion of Keaton. She was asked whether the fact that Keaton got out of the car and went into the house demonstrates that a reasonable person would not have felt that they were being detained. And my question to you is, and she said no, that it didn't show that because there were substantial and material differences. I'd like to ask you to respond to that if you would. I don't think there are substantial differences. While it is true that Keaton started walking in to the house as the officers were parked, he was not in the house at the point at which the officers parked and got out of their car because Officer Samuel said something, Tim said something like, hey, I want to talk, can I talk to you? Keaton mumbled something in response and then proceeded into the house. So if anything, Keaton's situation was more coercive, although neither situation is coercive, than Mr. Knight's is because the officer actually spoke to Keaton versus Mr. Knight, who the officers never even spoke to at the point in which they contend there was a seizure. All they did was approach him. And the fact that he would say, if you're on a bus, and in order to leave the bus, you have to walk by an officer who is sitting at the front of the bus, that doesn't mean that a reasonable person wouldn't feel free to leave, especially given the fact that in this case, someone had already left the scene. So there was simply no reason that an objectively reasonable person in Mr. Knight's position would have felt that had he acted similarly to Mr. Keaton, that he would have been treated differently than Mr. Keaton. Now, the officer communicated with Knight's in a sense, by tapping the window, right? Right, but that's not the point at which Knight's contends that he was teased. He contends that he was teased when the officer parked the car and approached him. But even considering the knocking on the door, that is just the same, I believe, as an officer asking a question, knocking on the door basically is the same as saying, can I talk to you? And this court, the Supreme Court is clear that merely approaching somebody in a parked car and asking a question does not constitute a teaser. My only point was, it seemed to me that there was, it made his situation comparable to Keaton, who they called out to and said they wanted to talk to him, and he essentially ignored him. At that point, yes, but as I said, that's not the point at which Knight's contends that he was teased. And in any event, Knight's wasn't in his car when the officers parked, it was only after the officers parked that he got into the car, and the district court found that Knight's could have walked away. Now, Knight's argues that the district court errs a matter of law by considering whether Knight's could have physically walked away rather than whether a reasonable person facing the totality of Mr. Knight's circumstances would have done so. But whether a defendant's path is blocked or impeded is a factual finding that goes into the analysis of whether a person has been teased within the meaning of the Fourth Amendment. The district court made a factual finding that Knight's could have walked away. In other words, that his path was not blocked or impeded. That factual finding is reviewed for clear error, which Knight's has not shown. So as in Miller v. Hager, the officers did not do anything that would appear coercive to a reasonable person. All of the factors that this court typically looks at to determine if the encounter is consensual points in favor of finding that it was. So the Supreme Court has recognized the importance of police being able to engage in encounters with citizens without any justification, as long as the encounter does not involve detention or coercion. Thus, in order for an encounter to trigger Fourth Amendment protection, the police must exert a show of authority that is not free to leave. The officers made no such show of authority here by approaching Knight in his parked car. Instead, as the district court found, this is a consensual encounter that did not implicate the Fourth Amendment until after the officers smelled marijuana. The record supports that conclusion. If the court has no further questions, I would submit to the reasonable suspicion argument that's in our brief and ask that this court affirm. Okay, Ms. Gershok, thank you very much. You've saved five minutes for rebuttal. Thank you, Judge Fryer. I have three brief points in rebuttal. First, the government argues here, as it did before the district court, that the location of the car is not completely blocking it in, that making it difficult, as the record is clear and everyone agrees, making it difficult to drive away is not the same as being totally blocked in. Again, reducing it to one factor, a matter of inches, is not the analysis here. The analysis is whether, looking at all of these circumstances, Mr. Knight would have felt free to drive away. The second point, with respect to Mr. Keaton, is that, again, as Judge Rosenbaum notes, that he's been able to walk away is not necessarily an inference of either direction. When Mr. Knight is just similarly not in the same position, both physically, he's on the side closer to the parks patrol car, he's not physically in the same situation, and an inference can easily be drawn that after Officer Samuel fails to make contact with Mr. Keaton, turns around and returns to him, Mr. Knight is faced with two officers who are now seeking to make contact, and a reasonable person, looking at the fatalities of the officers, is able to walk away, which is what's required in standards. The United States mentions Miller, my counselor mentions Miller, which is just not a similar show of authority. In Miller, police observe and follow Mr. Miller, who commits traffic violation, driving to a motel parking lot, and they park behind his parked car, which is parked in a marked motel parking space. From what he gets at, there's a clear path of walking straight into the motel room, which is what he tells officers he intends to do. The show of authority in the public motel parking lot by an officer parking directly behind his parked car is simply not the same. By the way, Mr. Knight is mindful of the important role of community policing. Looking at this total picture, and again, the entire picture that's drawn following the u-turn of officers Seligman and Samuel, when they cross the median, when they park in the manner that they do, when they get out of their car, and certainly by the time they are both on foot, they are exercising a show of authority from which a reasonable person in Mr. Knight's shoes could not feel free to sleep. Because Mr. Knight proceeds without reasonable suspicion in violation of the Fourth Amendment, we ask the court to remand the district court with instructions to grant Mr. Knight's motion to suppress. Thank you very much, Your Honor. Thank you, Ms. Blunton. We have your case, and we'll move to the next one.